**Papetti Samuels Weiss McKirgan LLP**
Scottsdale Quarter
15169 North Scottsdale Road
Suite 205
Scottsdale, AZ 85254

**Jared Sutton** (State Bar No. 028887)
Direct Dial: 480.800.3527
Email: jsutton@PSWMlaw.com
**Jennifer Lee-Cota** (State Bar No. 033190)
Direct Dial: 480.800.3528
Email: jleecota@PSWMlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Pacific Hospitality, LLC, Tasnim Sayani and Nizar Sayani, individuals, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** |

Plaintiff Best Western International, Inc. ("Best Western"), for its Complaint against Pacific Hospitality, LLC, Tasnim Sayani, and Nizar Sayani, alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Best Western is a non-profit corporation organized under Arizona law with its headquarters located in Phoenix, Arizona.

2. Upon information and belief, Defendant Pacific Hospitality, LLC ("Pacific") is a Washington limited liability company with its principal place of business in Federal Way, Washington.

3. Upon information and belief Defendant Tasnim Sayani ("Sayani") is a resident of Vancouver, British Columbia, Canada.

4. Upon information and belief Nizar Sayani is a resident of Tacoma, Washington. Defendant Nizar Sayani is Defendant Sayani's spouse and is named for community property purposes.

5. Defendant Pacific Hospitality executed a Best Western Membership Agreement on February 7, 2018, with respect to a hotel located at 32124 25th Avenue South, Federal Way in Washington (the "Hotel"), pursuant to which, among other things, it agreed that all disputes arising from or related to the membership application process, the membership agreement, or termination of membership would be resolved exclusively in the state or federal courts in Maricopa County, Arizona.

6. Defendant Pacific Hospitality designated Defendant Sayani as the Voting Member for the membership. As Voting Member, she agreed to be bound by the terms in the Membership Agreement.

7. Upon information and belief, Tasnim Sayani and Nazari Sayani own 50% of Pacific Hospitality.

8. This Court has jurisdiction over the claims and venue is proper pursuant to 15 U.S.C. § 1121(a).

9. Jurisdiction and venue are also proper under 28 U.S.C. §§ 1391 and 1332 because: (1) Best Western is an Arizona non-profit corporation with its principal place of business in Phoenix, and its witnesses are either located in Phoenix or available in Phoenix; (2) Defendants are citizens of Washington state and Canada; (3) the amount in controversy exceeds $75,000.00; (4) there are no matters pending between the parties in any other jurisdiction; and (5) Defendants executed a contract that contained a forum-selection clause requiring all disputes arising from that contract to be resolved by an state or federal court in Arizona and according to Arizona law.

10. The exercise of personal jurisdiction over Defendants by this Court is proper pursuant to and because, among other reasons, Defendants expressly agreed to litigate all disputes with Best Western arising from or related to the contracts with Best Western, or any relationship between the parties, in state or federal courts located in Maricopa County, Arizona.

**GENERAL ALLEGATIONS**

11. Best Western is a hotel-industry, service organization that operates on a

cooperative basis by and for its hotelier members, which are independent owners and operators of Best Western® branded hotels.

12. Best Western provides its members with a reservations system and marketing campaigns, as well as an option to participate in collective purchasing of hotel equipment, furnishings, and supplies (the "Best Western Services"), among other services that members can elect to purchase.

13. The rights and obligations of Best Western's members are determined by the member hotels and are set forth in the Membership Agreement, Best Western's Bylaws & Articles (the "Bylaws"), Best Western's Rules and Regulations (the "Rules and Regulations"), Board Policies, and other Best Western "Regulatory Documents," as that term is defined in Best Western's Bylaws (collectively the "Regulatory Documents").

14. In exchange for receiving Best Western Services, Best Western members are obligated to, among other things, pay annual dues, monthly fees, membership fees, and other assessments/charges, and to abide by all obligations as may be established from time to time in the Regulatory Documents, which are expressly incorporated by reference into the Membership Agreement. (*See* Ex. A, Membership Agreement ¶ A(1)-(2).)

15. The membership fees are due on December 1 of each year but are billed, as a courtesy, in monthly installments over the course of the following year to accommodate members.

16. Annual dues are charged in August of each year. All other dues, fees, charges, and assessments are billed monthly.

17. Pursuant to the Membership Agreement and Regulatory Documents, Defendants agreed "to timely pay all fees, dues, charges, and assessment imposed generally on the Membership by the Best Western Board of Directors ('Board') or the Membership, and the cost of all goods or services provided by or ordered through Best Western," that "[p]ast due amounts shall bear interest at the rate of one and one half

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

1 percent (1.5%) per month from the due date until paid, provided that such interest charge
2 shall in no way authorize or excuse late payments or limit Best Western's rights and
3 remedies against Member," that "[a]ny Member may resign from the Membership at any
4 time, but if a Member resigns or is terminated/cancelled by Best Western, fees and dues
5 for the remainder of the Initial Term (if still in the Initial Term) or for the remainder of
6 any Renewal Term (if beyond the Initial Term) become immediately due and payable."
7 (*See* Ex. A, Membership Agreement ¶ A(2), F(4)(a); Ex. B, Bylaws, Art. II § 5(B).)

8  18.  The Bylaws and Rules and Regulations are expressly incorporated by
9 reference into the Membership Agreement. (*See* Ex. A, Membership Agreement ¶ A(1)
10 and E.)

11  19.  Each Best Western member is authorized to use the trade name,
12 trademarks, service marks, logos, and other intellectual property and similar identifying
13 symbols owned by Best Western (the "Best Western Marks") in connection with its hotel
14 pursuant to a limited, non-exclusive license (the "Best Western License"), which is set
15 forth in the Membership Agreement. (*See* Ex. A, Membership Agreement ¶ C.)

16  20.  The Best Western License allows the member to use the Best Western
17 Marks in connection with the Hotel, subject to the terms of the Best Western License,
18 and only for the duration of the Best Western membership. *Id. See also id.* at ¶ E, F(1)–
19 (3).

20  21.  Best Western first adopted "Best Western" as its trade name in 1947.
21 Shortly thereafter, Best Western adopted and began using "Best Western" as a trademark
22 identifying hotel services provided by member hotels that were affiliated with Best
23 Western. Best Western has continuously and extensively promoted its trade name and
24 trademark in interstate commerce since 1947. As a result of this extensive promotion,
25 the trade name and trademark have become famous among consumers as a source-
26 identifying symbol.

27  22.  Since 1959, Best Western has registered with the United States Patent and
28 Trademark Office ("USPTO") various trademarks, service marks, and collective

4

membership marks. On April 14, 1959, the Best Western logo was first registered as a service mark by the USPTO under Registration No. 677,103. Best Western has developed the Best Western Marks at great expense over the past decades.

23. Best Western owns the following registrations for the Best Western Marks referenced in these registrations:

a. a Best Western Logo was registered as a collective membership mark by the USPTO on June 8, 1971, under Registration No. 914,812, which was registered to Western Motels, Inc., but assigned to Best Western International, Inc. in 1979, and is still active;

b. a Best Western Logo was registered as a service mark by the USPTO on June 8, 1971, under Registration No. 914,813, which was registered to Western Motels, Inc., but assigned to Best Western International, Inc. in 1979, and is still active;

c. a Best Western Logo was registered as a service mark by the USPTO on August 30, 1977, under Registration No. 1,072,360;

d. the Best Western word mark was registered as a service mark by the USPTO on February 3, 1987, under Registration No. 1,427,735;

e. the Best Western word mark was registered as a collective service mark by the USPTO on March 10, 1987, under Registration No. 1,432,431;

f. the Best Western crown logo design was registered as a service mark by the USPTO on December 6, 1988, under Registration No. 1,515,712;

g. Best Western's Crown and Shield logo was registered as a trademark by the USPTO on June 20, 1995, under Registration No. 1,900,620;

h. Best Western's Crown and Shield logo was registered as a service mark by the USPTO on November 7, 1995, under Registration No. 1,933,830;

i. Best Western's Crown and Shield logo was registered as a service mark by the USPTO on October 14, 1997, under Registration No. 2,105,546;

j. Best Western's Crown and Shield logo was registered as a service mark by

5

the USPTO on November 25, 1997, under Registration No. 2,116,079;

k. Best Western's Crown and Shield was registered as a service mark by the USPTO on March 3, 1998, under Registration No. 2,140,332;

l. the Best Western globe and pillow logo design was registered by the USPTO as a service mark on December 24, 2002, as Registration No. 2,665,955;

m. the BEST WESTERN word mark was registered by the USPTO as a service mark on August 3, 2004, under Registration No. 2,869,617;

n. the BESTWESTERN.COM word mark was registered by the USPTO as a service mark on April 19, 2005, under Registration Nos. 3,107,814, 3,080,655, and 3,083,667;

o. BW was registered as a service mark by the USPTO on November 29, 2005, under Registration No. 3,020,526;

p. the BW Circle logo was registered by the USPTO as a service mark on November 15, 2015, under Registration No. 5,083,443;

q. the BW Circle logo was registered by the USPTO as a service mark on May 31, 2016, under Registration No. 4,970,523;

r. the BW BEST WESTERN word mark was registered by the USPTO as a service mark on April 5, 2016, under Registration No. 4,932,563;

s. Best Western's current logo was registered by the USPTO as a service mark on November 8, 2016, under Registration No. 5,079,664; and;

t. Best Western has registered a variety of other designs and phrases as service marks in connection with the trade of hotel and motel lodging, many of which incorporate the words BEST WESTERN.

24. All of the registrations described above are in full force and effect, unrevoked, and uncanceled. Several of the above listed federal registrations for the Best Western word mark and logo have become incontestable under 15 U.S.C. § 1065.

25. The Best Western Marks are inherently distinctive and possess strong secondary meaning.

6

26. Termination or cancellation of the Best Western Membership results in termination of the Best Western License and imposes on the former member the obligation to "cease use of and remove from public view all Best Western [Marks]" within 15 days of the date of termination, and the former member must "actively take such steps as may be necessary to cause the cessation of all advertising and distribution of promotional material containing any Best Western [Marks]". This includes taking "reasonable steps to notify all third-party advertisers marketing the Property, online or in other media, that the Property is no longer affiliated with Best Western. Reasonable steps shall include, but not limited to, contacting third-party travel websites (e.g., Expedia, Travelocity, Orbitz, Priceline, and Hotwire . . ." (*See* Ex. A, Membership Agreement ¶F(1)-(2); *see also* Ex. C Rules and Regulations, Rule 300.6 stating: "Upon termination or cancellation of Membership, the former Best Western Member shall remove all Best Western branded signs, names, and marks, and any part thereof, or any display of a Best Western mark, logo, or emblem. The cost of removal . . . shall be the responsibility of the former Member. If Best Western must take action to require or complete the removal . . . the former Member shall be responsible for costs and fees, including attorneys' fees, incurred by Best Western.")).

27. Upon termination of the Best Western License, the former member must cease making any representation, whether direct or indirect, indicating the Hotel is affiliated with Best Western. (*See* Ex. A, Membership Agreement ¶ F(1)-(2).)

28. Section F(3) of the Membership Agreement provides for liquidated damages when a former member continues to use the Best Western Marks following termination of their Best Western membership and the Best Western License. The amount of liquidated damages is equal to fifteen percent (15%) of the mean of the Hotel's room rates per day for every day that a former member continues to use the Best Western Marks beyond the fifteen-day period. *Id.* at ¶ F(3).

**DEFENDANTS' BEST WESTERN MEMBERSHIP**

29. Defendant Pacific applied for a Best Western membership for a hotel

7

located at 32124 25th Avenue South, Federal Way in Washington with 165 guest rooms, known as the "Best Western Plus Seattle/Federal Way Hotel" (the "Hotel").

30. Defendant Pacific executed a Membership Application and Agreement for the Hotel on February 7, 2018. Defendant Sayani executed the Membership Agreement on Pacific's behalf as its "Member." (*See* Ex. A, Membership Agreement at p. 16.)

31. Defendant Pacific designated Defendant Sayani as its Voting Member. As the Voting Member, Defendant Sayani agreed to be bound by the Membership Application and Agreement executed in connection with the Hotel. (*See id*., ¶ K, & at Ex. A, Addendum A.)

32. Having accepted that designation, Sayani certified that she understood and agreed to meet Best Western membership requirements, and that she agreed to be personally liable for the responsibilities of the Hotel's Best Western affiliation, including the Membership Agreement and Regulatory Documents. (*Id*.)

33. Defendants were, and are, jointly bound by the Membership Agreement and Regulatory Documents. (*See*, Ex. A, Membership Agreement ¶ K.)

34. Each month Best Western sent Defendants monthly invoices with respect the membership for the Hotel. Those invoices included an "aging summary," showing the current balance due, any amounts past due by 30 days, any amounts past due by 60 days, any amounts past due by 90 days, and any amounts past due by 120 days or more. Many charges were billed in arrears for reservation activity that occurred the month before.

35. Best Western sent Defendants several letters concerning outstanding amounts that Defendants owed with respect to the membership for the Hotel and past due balances were shown in the "aging summary" of their monthly statements. (Ex. D, Letter dated 2/11/21; Ex. E, Letter dated 3/11/21; Ex. F, Letter dated 4/15/21; Ex. G, Monthly Statements for August 2020 to March 2022).

36. Best Western also sent Defendants communications with respect to the Property's property improvement plan that was overdue. (Ex. H, Letter dated 5/26/21).

8

37. On June 29, 2021, Best Western terminated the membership agreement with Defendants for cause, effective immediately. (Ex. I, Letter dated 6/29/2021).

38. At that time, Defendants owed $150,067.96 in pre-termination fees and charges and interest, most of which was well over 120 days past due, as shown on the June 1, 2021 invoice for the Hotel. (Ex. G, June 1, 2021 Monthly Statement).

39. On June 29, 2021, Best Western sent a letter to Defendants about the termination, asking them to make arrangements to satisfy the balance owed on the Best Western account for the Hotel as soon as possible, including charges for the fees and dues for the remainder the fiscal year of the Membership Agreement (aka "liquidated damages"). (Ex. I, Letter dated 6/29/21.)

40. To date, Defendants have not paid the balance then-owed or the charges for the fees and dues for the remainder the fiscal year of the Membership Agreement.

41. Best Western's June 29, 2021, letter about the termination also noted that Defendants were required by the Membership Agreement and Regulatory Documents to de-brand and cease using Best Western's trademarks and logos by July 14, 2021 and included a request that Defendants return a "Logo Removal Checklist and Affidavit" and submit photographs showing that all Best Western Marks had been removed. (Ex. I, Letter dated 6/29/21.)

42. To date, Defendants have not submitted the Logo Removal Checklist and Affidavit and are still using Best Western's Marks.

43. Upon information and belief, the Hotel is now operating under the name Evergreen Inn & Suites Seattle/Federal Way.

**DEFENDANTS HAVE FAILED TO PAY PRE-TERMINATION AND POST-TERMINATION FEES AS REQUIRED BY THE MEMBERSHIP AGREEMENT**

44. After receiving Best Western's June 29, 2021, letter about the termination, Defendants did not make arrangements to pay or pay the outstanding sums owed on the Best Western account for the Hotel or the liquidated damages owed.

45. Following the termination, Best Western has continued to send Defendants

9

an invoice each month showing the outstanding sums (with interest) owed.  (Ex. G, July 1, 2021 to March 1, 2022 Monthly invoices).

46. On September 17, 2021, Best Western sent a demand letter to Defendants with respect to the outstanding amounts owed to Best Western as provided in the Membership Agreement and Regulatory Documents, which described the amounts for pre-termination services, liquidated damages, and interest with a total owed of $206,443.40.  (Ex J, 9/17/21 Letter.)  Thereafter Best Western has followed-up with Defendants several times about payment.  (See e.g., Ex. K, 12/6/21 letter)

47. To date, Defendants have failed to pay as required by the Membership Agreement and Regulatory Documents.  As of March 1, 2022, the total account balance, with accrued interest, is $219,026.99 (*See* Ex G, Monthly Statements from September 1, 2021 to March 1, 2022)  The outstanding balance includes fees for services provided to Defendants by Best Western prior to cancellation as specified in the Membership Agreement of $137,113.61, liquidated damages as specified in the Membership Agreement of $43,612.08, and interest as specified in the Membership Agreement.

48. As of the date of the complaint, Defendants still have not paid Best Western for their outstanding account balance.  With service charges for non-payment, as set forth in the Membership Agreement, the outstanding account balance will grow each month.

**DEFENDANTS ARE STILL USING BEST WESTERN'S MARKS IN VIOLATION OF THE MEMBERSHIP AGREEMENT AND TRADEMARK LAW**

49. On March 22, 2022, Best Western visited the Hotel and learned that the Hotel was still using Best Western's Marks, to include on exterior signage, and on the Hotel's courtesy vehicle.  Best Western took photographs of the Hotel, which are attached at Exhibit L.

50. Upon information and belief based on observations of Best Western staff who took the photographs on March 22, 2022, staff of the Hotel are also wearing uniforms with Best Western logos.

10

51. To date the Hotel is still listed on various internet websites as a Best Western branded hotel, including tripadvisor.com, mapquest.com, visitfw.org, and yelp.com.

52. Pursuant to the Membership Agreement and Regulatory Documents, Defendants owe liquidated damages for each day they have unlawfully used the Best Western Marks at the Hotel. *See*, Ex. A, Membership Agreement ¶ F(3).)

53. Pursuant to the Membership Agreement, the liquidated damages calculation for unauthorized use of Best Western's Marks is 15% of the Hotel's average daily rates, times the total number of rooms, times the number of days the Hotel has been displaying the Best Western Marks without authorization. (*See*, Ex. A, Membership Agreement ¶ F(3).)

54. As of the date of termination, the Hotel's average daily rate was $84.29, and it had a total of 165 guest rooms.

55. Fifteen percent (15%) of the Hotel's average daily rate is $12.64.

56. The daily damages per day for the Hotel's infringement pursuant to the Membership Agreement is $2,086.18. (*Id*.)

57. As of April 1, 2022, the Defendants have been using Best Western's Marks without authorization for 261 days.

58. As of the date of this filing, the liquidated damages owed by Defendants to Best Western for their unauthorized use of the Best Western's Marks is $544,492.98 (15% of average daily rate of $84.29 (*i.e.* $12.64), multiplied by the total number of guest rooms (165), multiplied by the total number of using the Best Western Marks without authorization). (*See*, Ex. A, Membership Agreement ¶ F.)

59. This will continue to increase for every day that Defendants continue to use Best Western's Marks. (*Id*.)

## COUNT I – BREACH OF CONTRACT

60. Best Western incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

11

61. The Membership Agreement is a valid, binding and enforceable contract.

62. Defendants have refused to and continue to refuse to pay Best Western the amounts due and owing as required by the Membership Agreement.

63. Best Western fully performed its obligations under the parties' contract.

64. Defendants' performance under the parties' contract was not excused.

65. To date, Defendants have failed to pay as required by the Membership Agreement and Regulatory Documents. As of March 1, 2022, the total account balance, with accrued interest, was $219,026.99. The outstanding balance includes fees for services provided to Defendants by Best Western prior to cancellation as specified in the Membership Agreement of $137,113.61, liquidated damages as specified in the Membership Agreement of $43,612.08, and interest as specified in the Membership Agreement.

66. Pursuant to the express terms of the Membership Agreement, interest has accrued and continues to accrue on the unpaid amounts at 1.5% per month until paid in full.

## COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

67. Best Western incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

68. The Membership Agreement is a valid, binding, and enforceable contract.

69. The agreement contains an implied covenant of good faith and fair dealing.

70. Defendants' conduct, as described herein, constitutes a breach of the covenant of good faith and fair dealing implied in the contract.

71. As a direct and proximate result of Defendants' misconduct and failure to perform the parties' contract, Best Western has suffered damages in an amount to be proven at trial.

## COUNT III – BREACH OF CONTRACT FOR POST TERMINATION USE OF BEST WESTERN'S TRADEMARKS

72. Best Western incorporates by reference the allegations in the preceding

paragraphs as though fully set forth herein.

73. Pursuant to the express terms of the Membership Agreement, Defendants were obligated to remove from public view, and to cease all use of, the Best Western Marks in connection with the Hotel within fifteen (15) days of termination.

74. Defendants' failure to remove Best Western marks and their continued use of the Best Western Marks after July 14, 2021, constitutes a breach of the Membership Agreement and requires Defendants to pay Best Western liquidated damages. This prohibition includes making any representation, whether direct or indirect, indicating that the Hotel property is affiliated with Best Western.

75. Pursuant to the express terms of the Membership Agreement, Defendants were required to "cease use of and remove from public view all Best Western Identifying Marks." (*See*, Ex. A, Membership Agreement ¶ F.)

76. The Membership Agreement was terminated effective June 29, 2021, and the deadline for removing the Best Western Marks was July 14, 2021.

77. Despite their contractual obligations, Defendants have failed to remove the Best Western Marks.

78. Defendants owe $2,086.18 per day for each day they unlawfully used the Best Western Marks at the Hotel. The liquidated damages calculations are based on the Hotel's daily rates and total number of rooms.

79. Defendants are unlawfully using the Best Western Marks at the Hotel.

80. As of April 1, 2022 – Defendants owe liquidated damages for unauthorized use of Best Western's Marks in an amount of $544,492.98 .

**COUNT IV – TRADEMARK INFRINGEMENT UNDER ARIZONA LAW (A.R.S. § 44-1451)**

81. Best Western incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

82. The Best Western Marks are famous within the State of Arizona and became famous in Arizona long before Defendants began using the marks.

83. The Membership Agreement was terminated effective June 29, 2021, and the deadline for removing the Best Western Marks was July 14, 2021.

84. Defendants unlawfully continued to use the Best Western Marks at the Hotel after this date.

85. Defendants' acts constitute commercial use of a mark or trade name and trademark infringement based on Arizona registered Trademark No. 51370 in violation of A.R.S. § 44-1451.

86. Upon information and belief, Defendants have undertaken these acts willfully and with the intent to trade on Best Western's reputation and to cause confusion, mistake, and deception on the public.

87. Defendants' acts have caused irreparable harm and injury to Best Western's famous Best Western Marks, business reputation, and goodwill.

88. Best Western has suffered, is suffering, and will continue to suffer irreparable injury for which Best Western has no adequate remedy at law.  Best Western is therefore entitled to a permanent injunction against further infringing conduct by Defendants.

**COUNT V–TRADEMARK INFRINGEMENT UNDER FEDERAL LAW (15 U.S.C. § 1114(1))**

89. Best Western incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

90. The Membership Agreement was terminated effective June 29, 2021, and the deadline for removing the Best Western Marks was July 14, 2021.

91. Defendants did not stop using the federally registered Best Western Marks in connection with the Hotel by the July 14, 2021 deadline.

92. Defendants have acted without Best Western's consent and their acts constitute infringement of the federally registered Best Western Marks in violation of 15 U.S.C. § 1114(1).

93. Defendants' misconduct also likely diverted to them the benefit of and/or

damaged the reputation and goodwill that Best Western has built through the years.

94. Upon information and belief, Defendants' infringement was willful, and Best Western is entitled to recover all damages sustained pursuant to 15 U.S.C. § 1117.

95. Best Western has suffered, is suffering, and will continue to suffer irreparable injury for which Best Western has no adequate remedy at law. Best Western is therefore entitled to a permanent injunction against further infringing conduct by Defendants.

### COUNT VI – FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION (15 U.S.C. § 1125(a))

96. Best Western incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

97. The unauthorized use of the Best Western Marks is likely to cause the public to believe, erroneously, that the non-member Hotel and associated services are sponsored by, endorsed by, or associated with Best Western.

98. Defendants' operation and competition with Best Western through infringement of the federally registered Best Western Marks in connection with the Hotel constitutes a false designation of origin and unfair competition under 15 U.S.C. §1125(a).

99. Defendants have caused Best Western to suffer immediate, irreparable, and continuous loss, including injury to its goodwill and reputation.

100. Upon information and belief, Defendants have acted willfully and with the intent to cause confusion, mistake, and deception on the public.

101. Upon information and belief, Defendants' unfair competition is willful and Best Western is entitled to recover damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1117.

### COUNT VII - COMMON LAW TRADEMARK INFRINGEMENT

102. Best Western incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

103. Best Western has common law rights in the Best Western Marks through the use of the marks in commerce, such rights existing long before any use of the marks by Defendants.

104. Defendants' acts constitute common law infringement of the Best Western Marks.

105. Upon information and belief, Defendants have acted willfully and with the intent to trade on Best Western's reputation and to cause confusion, mistake, and deception on the public.

106. Defendants' acts have caused irreparable harm and injury to Best Western's famous Best Western Marks, business reputation, and goodwill.

107. Best Western is entitled to recover damages as allowed under common law.

108. Best Western has suffered, is suffering, and will continue to suffer irreparable injury for which Best Western has no adequate remedy at law. Best Western is therefore entitled to a permanent injunction against further infringing conduct by Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Best Western International, Inc. seeks judgment against Defendants, jointly and severally, as follows:

    A. An award to Best Western of its damages in an amount to be proven at trial;

    B. Attorneys' fees and costs pursuant to the Membership Agreement, A.R.S. §§ 12-341 and 12-341.01, and any other applicable law;

    C. Pre- and post-judgment interest; and

Any other relief the Court deems just and proper.

DATED this 1st day of April, 2022.

                PAPETTI SAMUELS WEISS MCKIRGAN LLP

                /s/Jennifer Lee-Cota
                Jared Sutton
                Jennifer Lee-Cota

                *Attorneys for Plaintiff*